STATE OF NORTH CAROLINA v. JOSEPH MARIO TARANTINO

No. 8624SC693

(Filed 16 December 1986)

**Searches and Seizures § 6— manufacturing marijuana—illegal search—reasonable expectation of privacy**

  In a prosecution for manufacturing marijuana, the trial court correctly suppressed evidence seized during a search of defendant's building because the information which furnished probable cause for issuance of the search warrant was obtained as a result of a constitutionally impermissible search. Defendant had a reasonable expectation of privacy with respect to his activities and property within his building where the doors to the building were secured and the windows covered; the building was located on a lightly traveled road in a sparsely populated area; and, in order to view the interior of the building, the detective had to bend and look through a crack about three feet from the floor of a roofed and partially enclosed porch at the rear of the building, use his flashlight, and place his eye within a foot of the opening.

APPEAL by the State from *Gray, Judge.* Order entered 24 April 1986; amended order entered 2 June 1986 in Superior Court, AVERY County. Heard in the Court of Appeals 30 October 1986.

On 31 August 1985, Detective B. R. Baker, Jr. of the Avery County Sheriff's Department obtained a search warrant from a magistrate and conducted a search of an old store building owned by defendant. As a result of the search, defendant was charged in an indictment returned by a federal grand jury with manufacturing marijuana in violation of the federal statute. Defendant moved, in the United States District Court for the Western District of North Carolina, to suppress evidence seized in the course of the search. His motion was allowed by United States District Judge D. B. Sentelle and, consequently, the U. S. Attorney chose not to proceed with the prosecution.

Thereafter, defendant was indicted by the Avery County grand jury upon charges of manufacturing marijuana by growing

47 marijuana plants in pots in violation of N.C.G.S. 90-95(a)(1). He moved, in the Superior Court, to suppress evidence seized during the search of his building on the grounds that the information which provided probable cause for the issuance of the search warrant had been obtained in violation of the Fourth Amendment. From an order granting the motion, the State appealed. Defendant also moved to suppress the evidence on the grounds that Judge Sentelle's order was entitled to full faith and credit in the North Carolina courts and that the State was collaterally estopped from relitigating the issue. The trial court denied the latter motion, to which ruling the defendant excepted and made cross-assignments of error.

*Attorney General Lacy H. Thornburg by Assistant Attorney General John H. Watters for the State.*

*Beskind and Rudolf, P.A., by Thomas K. Maher and David S. Rudolf; Loflin and Loflin, by Thomas F. Loflin, III, for defendant appellant.*

MARTIN, Judge.

The State appeals, pursuant to G.S. 15A-979(c) and G.S. 15A-1445(b), from the order of the Superior Court suppressing evidence seized when defendant's building was searched by law enforcement officers having a search warrant in their possession. We conclude, as did the trial court, that the information which furnished probable cause for the issuance of the search warrant was itself obtained as a result of a constitutionally impermissible search of defendant's premises and we affirm the trial court's order.

Ordinarily, the scope of appellate review of an order suppressing evidence would require consideration of two questions: (1) whether the trial court's findings of fact are supported by competent evidence, and (2) whether those findings support the court's legal conclusions. *State v. Cooke,* 306 N.C. 132, 291 S.E. 2d 618 (1982). In the present case, however, the State has not excepted to any of the trial court's findings of fact, thereby raising a presumption that they are supported by competent evidence and rendering such findings conclusive on appeal. Even so, we have reviewed the testimony and other materials presented at the suppression hearing and conclude that the trial court's find-

ings completely and succinctly summarize the relatively un-
complicated facts of this case. Those findings were as follows:

1) On the date of August 30, 1985, Detective B. R. Baker,
Jr. received a telephone call from a citizen, whose name,
Detective Baker has stated must be kept confidential for his
protection. This caller stated that he had observed within the
"Old Aldridge Store Building" marijuana plants growing and
that these could be seen by looking through the exterior
sheathing on the back wall and that the caller had made this
observation himself. Baker was familiar with the building and
knew it himself to be called by the name "Old Aldridge Store
Building." This caller has given information on other occa-
sions which could not be verified, so that on this instance,
Detective Baker did not consider that he had probable cause
to obtain a search warrant.

2) Acting upon information supplied by the informant,
Detective Baker proceeded to the Aldridge Store Building
during the nighttime, without a search warrant, to investi-
gate the information furnished by the informant.

3) The building is located on N.C. Highway 194 in Avery
County between Elk Park and Banner Elk. This road is a
winding mountain road in a rural sparcely (sic) populated
area of Avery County. Traffic conditions are light on this
road. The building appears to be an old building and it was
during this time in an apparent poor state of repair. It is a
frame two story building and it was mostly covered with a
brick design external wall covering, although in its rear, this
siding was removed in several areas. The building was con-
structed on the bank of a hill so that as one walked the
ground from front to rear, the ground elevated and at the
rear one would be at the second floor level and the rear
doors opened directly into the second floor. The building has
a front door which opens into the bottom floor. This door was
solid wood and there were two front windows opening into
the bottom floor. The front door was padlocked. Two win-
dows opening into the second floor were totally covered by
wood on the inside. On each side of the building was located
one small window which opened into the second floor. Those
windows had been covered from the outside with wooden
boards.

4) The rear of the building had two doors, one of which was solid wood and the other had an opening for a glass pane which had been covered entirely by wood. Both doors opened directly into the second floor. At the rear of the building was a floor which would be on the approximate same level as the interior second floor of the building. This floor was the same width as the rear of the building. On one side of this floor was located a solid wall and in the rear was a wall of the building with an open hole and on the other side was located a wide passage. This passage had no door and its dimensions were wider than standard doors. Over the top of this floor was a roof slanting downward from the main portion of the building. The roof of the main portion of the building was at a triangle. On the interior wall of the rear part of the structure was a small enclosed area which was located on the inside of the fully enclosed wall. The large opening into the porch or room which was enclosed on three sides was on the same side of the building as a small parking area. The passage into the back porch or room was not obstructed in any way on August 30, 1985.

5) The parking lot is a small graveled area and there was a noticeable but not well-worn path leading from it to the passage onto the rear porch on August 30, 1985.

6) In an effort to investigate this call, Mr. Baker went to the building which has been described earlier in these findings, and arrived there at 11:00 o'clock P.M. on a dark night. Mr. Baker parked his automobile on the gravel parking lot near the building, he knocked on the front door, and by the use of a flashlight, walked along the side of the building to the rear area which was on the opposite side from the road. Mr. Baker then walked on to the porch or the additional room, knocked on the door, heard no response and saw no indication of any activity anywhere about the building. Mr. Baker then found a section of the wall where the boards did not join which were not externally covered and by holding the flashlight over his head and bending his body, he shined his light through the cracks, which in his opinion were as wide as one-quarter of an inch. When Mr. Baker shined his flashlight inside the building through the cracks, he was able to illuminate a small part of the interior of the building and

could see plants growing which he recognized as being mari-juana. At that time, Mr. Baker could identify that there were several separate plants on the interior of the building. Subsequently, on his second visit to the building, with a warrant, he found that the two rear doors to the building were nailed shut from the inside.

7) After his examination of the premises, Detective Baker proceeded to the Sheriff's Department of Avery County, executed an affidavit and obtained a search warrant from a magistrate, returned to the premises in question, and seized the marijuana and certain other items incident to their growth named in the warrant.

Although there was no specific finding with respect to ownership of the building, neither the State nor the defendant has raised any issue as to that fact and all of the evidence indicates that defendant owned the building. Based upon its findings, the trial court made the following legal conclusions and ordered suppression of the challenged evidence:

1. The first inspection of the property by Detective Baker on August 30, 1985, constituted a warrantless search of the premises in question.

2. The Defendant had a reasonable expectation of privacy that was invaded by the search.

3. The marijuana seen by Detective Baker on his first visit to the premises in question was not located in an open fields area.

4. The warrantless search of Defendant's premises by Detective Baker does not fall within the "plain view" exception nor any other exception to the requirement for a valid search warrant.

5. The initial inspection of the Defendant's premises by Detective Baker was violative of the Fourth Amendment to the U. S. Constitution as a matter of law.

The State contends that the trial court erred by concluding that Detective Baker's initial inspection of the premises constituted a warrantless search in violation of the Fourth Amendment.

A search, within the meaning of the Fourth Amendment, "occurs when 'an expectation of privacy that society is prepared to consider reasonable is infringed.'" *Maryland v. Macon*, 472 U.S. 463, ---, 86 L.Ed. 2d 370, 376, 105 S.Ct. 2778, 2782 (1985), *quoting United States v. Jacobsen*, 466 U.S. 109, 80 L.Ed. 2d 85, 104 S.Ct. 1652 (1984). Whether or not a person who invokes the protection of the Fourth Amendment may claim a "reasonable expectation of privacy" depends upon 1) whether, by his conduct the person has "exhibited an actual (subjective) expectation of privacy," and 2) whether that subjective expectation of privacy is "one that society is prepared to recognize as reasonable." *Smith v. Maryland*, 442 U.S. 735, 740, 61 L.Ed. 2d 220, 226-27, 99 S.Ct. 2577, 2580 (1979), *citing Katz v. United States*, 389 U.S. 347, 19 L.Ed. 2d 576, 88 S.Ct. 507 (1967) (Harland, J. concurring).

Initially, the State contends that although defendant's building was secured from physical intrusion, defendant could not have had an actual expectation of privacy from visual intrusion by a "curious onlooker" such as the informant or Detective Baker. The State further contends that even if defendant had such an expectation, it was not one which society would recognize as reasonable. The argument is based upon the existence of some quarter-inch cracks in a section of the rear wall of the building, through which Detective Baker made his initial observation. The State argues that because the contents of the building were exposed to the public by means of these cracks, Fourth Amendment protections do not apply.

It is now well established that a person cannot have a reasonable expectation of privacy, protected by the Fourth Amendment, in things or activities which are generally visible from some public vantage point. *Katz, supra; California v. Ciraolo*, --- U.S. ---, 90 L.Ed. 2d 210, 106 S.Ct. 1809 (1986). Thus, a governmental observation of that object or activity does not amount to a search. In the present case, however, the trial court's findings support its conclusion that defendant had a reasonable expectation of privacy with respect to his activities and property within his building. The secured doors and covered windows of the building, as well as its location on a lightly traveled road in a sparsely populated area, are evidence of defendant's actual or subjective expectation of privacy. These findings support, as well, the trial court's conclusion that defendant's expectation of privacy

was objectively reasonable when viewed under the second test articulated in *Smith*. The contents of the building were not, as the State contends, exposed to public view. To the contrary, in order to view the interior of the building, Detective Baker testified that he had to bend his body to look through a crack about three feet from the porch floor, using his flashlight and placing his eye within a foot of the opening.

The State argues, however, that due to the nature of the building, an old store, and its generally run down appearance, it had all the indicia of an abandoned building and any expectation of privacy with respect to its contents was unreasonable. This argument has no merit. As noted earlier, the building had been physically secured. The door was padlocked and the windows were covered, providing at least some objective indication that the occupant intended and expected the interior to be private. There is no abandonment if the owner or occupant of property intends to retain a privacy interest in the property. *See United States v. Burnette*, 698 F. 2d 1038 (9th Cir. 1983).

Had Detective Baker made his initial observation through an uncovered window, a partially opened door, or some other aperture of such a nature as to negate a reasonable expectation of privacy within the building, our result would likely be different. However, in deciding questions relating to the objective reasonableness of one's expectation of privacy, it is apparent that each case must be judged on the basis of its own peculiar facts and circumstances. In this case we hold that the existence of quarter-inch cracks in a portion of an exterior wall, located within a roofed and partially enclosed porch at the rear of an otherwise secured building located in an isolated area, does not render unreasonable the occupant's expectation of privacy with respect to his activities conducted within the building.

The next issue with which we are confronted is whether Detective Baker's actions were sufficiently intrusive to constitute an infringement upon defendant's legitimate expectation of privacy, thus constituting a "search." *Macon, supra*. Since we have held that the existence of the quarter inch cracks in the rear wall of the building was insufficient to negate the reasonableness of defendant's expectation of privacy, it follows that Detective Baker's actions in peeping through the cracks infringed upon de-

fendant's rights of privacy and amounted to a "search" in the constitutional sense.

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz, supra,* 389 U.S. at 357, 19 L.Ed. 2d at 585, 88 S.Ct. at 514. There is no contention by the State that Detective Baker's actions were authorized by any exception to the warrant requirement. Since all of the information providing probable cause for the subsequent issuance of a search warrant was obtained as a result of Detective Baker's initial warrantless search of defendant's premises in violation of the Fourth Amendment, the warrant was invalid and evidence seized pursuant thereto is inadmissible. *Mapp v. Ohio,* 367 U.S. 643, 6 L.Ed. 2d 1081, 81 S.Ct. 1684 (1961). The order of the trial court must be affirmed.

In view of our decision, we deem it unnecessary to address defendant's cross-assignments of error.

Affirmed.

Chief Judge HEDRICK and Judge COZORT concur.