STATE OF NORTH CAROLINA v. JOSEPH MARIO TARANTINO

No. 8624SC693

(Filed 21 July 1987)

**Searches and Seizures § 25— probable cause based on information gained during impermissible search—prior opinion not altered**

 The actions of a detective in entering a roofed and enclosed porch at the rear of defendant's building, bending over, and looking through a crack about three feet from the porch floor, even when considered in light of *U. S. v. Dunn*, 480 U.S. ---, amounted to an impermissible invasion of defendant's reasonable expectation of privacy in his building and its contents, and the opinion of the Court of Appeals in *State v. Tarantino*, 83 N.C. App. 473, is not altered.

ON rehearing pursuant to the 9 April 1987 Order of the Supreme Court of North Carolina directing that this cause be reconsidered in light of *United States v. Dunn*, 480 U.S. ---, 94 L.Ed. 2d 326, 107 S.Ct. 1134 (1987). Originally heard in the Court of Appeals 30 October 1986.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General John H. Watters, for the State.*

*Beskind and Rudolf, P.A., by Thomas K. Maher and David S. Rudolf; Loflin and Loflin, by Thomas F. Loflin, III, for defendant appellant.*

MARTIN, Judge.

This case was initially before us upon the State's appeal from an order of the Avery County Superior Court suppressing evidence seized by law enforcement officers during a search of defendant's building pursuant to a search warrant. We concluded that the information which furnished probable cause for issuance of the search warrant was obtained as a result of a constitutionally impermissible search of defendant's premises and affirmed the order of the trial court. *State v. Tarantino*, 83 N.C. App. 473, 350 S.E. 2d 864 (1986). The Supreme Court of North Carolina allowed the State's subsequent petition for discretionary review for the limited purpose of entering the following order:

> The case is remanded to the Court of Appeals for further review in light of the U.S. Supreme Court's decision in U.S. v. DUNN (9 March 1987) [sic].

*State v. Tarantino*, 319 N.C. 409, 354 S.E. 2d 727 (1987). We have complied with the directive of our Supreme Court and conclude that the facts of the present case so distinguish it from those presented in *United States v. Dunn*, 480 U.S. ---, 94 L.Ed. 2d 326, 107 S.Ct. 1134, *reh'g denied*, --- U.S. ---, 95 L.Ed. 2d 519, 107 S.Ct. 1913, that the holdings in that case are not dispositive of the issue involved in this appeal and do not require that we alter our previous decision.

In *United States v. Dunn, supra*, Drug Enforcement Administration agents, using electronic devices and aerial photography, traced large quantities of chemicals and equipment used in the manufacture of controlled substances to a barn located on defendant Dunn's 198-acre ranch. The entire ranch was encircled by a perimeter fence and contained several interior fences. Dunn's residence and a nearby greenhouse were encircled by an interior fence and the barn in question was located about fifty yards outside this fence. All of the buildings were about a half-mile from the public road. The front of the barn was enclosed by a wooden fence and locked, waist-high gates, and had an open overhang. A netting material was stretched from the ceiling of the barn to the top of the wooden gates such that it was necessary to stand next to the netting in order to see into the barn.

Law enforcement officers made a warrantless entry onto Dunn's ranch in the nighttime, crossing the perimeter fence and interior fences, including the wooden fence enclosing the front portion of the barn, but did not enter the barn. Using a flashlight and looking through the netting, the officers observed what they thought to be a drug laboratory. On the basis of the information acquired through their entry onto Dunn's ranch, the officers obtained a search warrant. They executed the warrant, seized chemicals and equipment and arrested Dunn.

The primary issue before the United States Supreme Court in *Dunn* was whether the barn containing the drug laboratory was within the curtilage of Dunn's residence, so as to be accorded protection under the Fourth Amendment. Applying four factors in its analysis of the issue, the Court concluded that Dunn's barn and the area immediately surrounding it were outside the curtilage of the house. This holding is inapplicable to the present case because no extent-of-curtilage question has been presented.

In *Dunn*, however, the Court also held that the officers' observation of the interior of the barn from their vantage point at its front gate was not an unreasonable search proscribed by the Fourth Amendment. Relying upon its decisions in *Hester v. United States*, 265 U.S. 57, 68 L.Ed. 898, 44 S.Ct. 445 (1924) and *Oliver v. United States*, 466 U.S. 170, 80 L.Ed. 2d 714, 104 S.Ct. 1735 (1984), the Court reasoned that the area around the barn, being outside the curtilage, was essentially an "open field," unprotected by the Fourth Amendment, and that there is no constitutional prohibition against police observations made while standing in an open field just as there is no prohibition against observations made from a public place. *See California v. Ciraolo*, 476 U.S. ---, 90 L.Ed. 2d 210, 106 S.Ct. 1809, *reh'g denied*, --- U.S. ---, 92 L.Ed. 2d 728, 106 S.Ct. 3320 (1986). Finally, citing *Texas v. Brown*, 460 U.S. 730, 75 L.Ed. 2d 502, 103 S.Ct. 1535 (1983), the Court stated that "the officers' use of the beam of a flashlight, directed through the essentially open front of respondent's barn, did not transform their observations into an unreasonable search within the meaning of the Fourth Amendment." *Dunn, supra*, at ---, 94 L.Ed. 2d at 337, 107 S.Ct. at 1141.

The facts of the present case are sufficiently summarized in our previous opinion, *State v. Tarantino, supra*. In its new brief,

the State insists that *Dunn* requires that we set aside our previous decision and reverse the trial court's order suppressing the evidence seized from defendant Tarantino's building. As grounds for its position, the State first appears to argue that Tarantino's building was not a place entitled to Fourth Amendment protection. The decision of the United States Supreme Court in *Dunn* did nothing to alter the rule that the Fourth Amendment applies whenever the person invoking its protection has exhibited an actual expectation of privacy which society is prepared to recognize as reasonable. *Smith v. Maryland*, 442 U.S. 735, 61 L.Ed. 2d 220, 99 S.Ct. 2577 (1979). The protection of the Fourth Amendment extends to privacy interests in commercial property. *See Oliver v. United States, supra*, at 178, n.8, 80 L.Ed. 2d at 224, 104 S.Ct. at 1741. In the present case, the trial court concluded that Tarantino had a reasonable expectation of privacy in his building. Its conclusion is fully supported by its findings of fact.

Even so, argues the State, the actions of Detective Baker in looking through cracks in a rear wall of Tarantino's building were no more intrusive of Tarantino's privacy interests than were the actions of the officers in *Dunn*, who had to stand immediately next to the netting and use a flashlight in order to see into the barn. We disagree.

In *Dunn*, after deciding that the observations of the officers were made from open fields, which are no different for Fourth Amendment purposes than a public place, the Court relied upon "the premise that the Fourth Amendment 'has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares.'" *Dunn, supra*, at ---, 94 L..Ed. 2d at 337, 107 S.Ct. at 1141, *quoting California v. Ciraolo, supra*, at ---, 90 L.Ed. 2d at 216, 106 S.Ct. at 1812. The Court referred to the area into which the officers looked as "the *essentially open front* of respondent's barn." *Dunn, supra*, at ---, 94 L.Ed. 2d at 337, 107 S.Ct. at 1141 (emphasis supplied). The fact that the officers used a flashlight did not render their observation an unreasonable intrusion. *Id*.

In the present case, we hasten to agree with the State that Detective Baker's use of a flashlight to illuminate the interior of Tarantino's building does not, standing alone, render his actions

impermissibly intrusive. *See Texas v. Brown, supra, and United States v. Lee,* 274 U.S. 559, 71 L.Ed. 1202, 47 S.Ct. 746 (1927). There are, however, important factual differences between *Dunn* and the present case. While the officers in *Dunn* made their observation from an "open field" outside the barn, Detective Baker went into a roofed and enclosed porch at the rear of Tarantino's building in order to gain the vantage point from which he made his observation. The front of Dunn's barn was "essentially open"; Tarantino had boarded all of his windows and doors. The observation in *Dunn* was made when the officers "peered into the barn's open front"; the aperture through which Detective Baker made his observation consisted of several quarter-inch cracks in a rear wall located within an enclosed porch. In order to make his observation, it was necessary for Detective Baker "to bend his body to look through a crack about three feet from the porch floor . . . placing his eye within a foot of the opening." *State v. Tarantino, supra,* at 479, 350 S.E. 2d at 867. There was no evidence that the contents of Tarantino's building were visible from any position other than as previously described, in daylight or otherwise. The contents certainly could not have been viewed from any area accessible to the general public. *See Katz v. United States,* 389 U.S. 347, 19 L.Ed. 2d 576, 88 S.Ct. 507 (1967); *See v. City of Seattle,* 387 U.S. 541, 18 L.Ed. 2d 943, 87 S.Ct. 1737 (1967).

We remain of the opinion that the actions of Detective Baker, even when considered in light of *United States v. Dunn, supra,* amounted to an impermissible invasion of Tarantino's reasonable expectation of privacy in his building and its contents. Accordingly we decline to disturb our previous decision. The order of the trial court is affirmed.

Affirmed.

Chief Judge HEDRICK and Judge COZORT concur.