STATE of Iowa, Appellee,

v.

Georgia Carol SHOWALTER, and Allen LeRoy Huenefeld, Appellants.

No. 87–323.

Supreme Court of Iowa.

July 20, 1988.

Charles L. Harrington, Appellate Defender, and James F. Whalen, Asst. Appellate Defender, for appellants.

Thomas J. Miller, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., and Allan W. Vander Hart, County Atty., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

Defendants, Georgia Carol Showalter and Allen LeRoy Huenefeld, are charged with second degree arson in violation of Iowa Code sections 712.1 and 712.3 (1985). Their pretrial motions to suppress evidence seized during a search of the barn outside their residence were overruled. Defendants then filed a joint application for discretionary review of those rulings. We granted their application and now reverse and remand.

I. *Background facts and proceedings.* Defendants resided together in a rented farmstead in rural Buchanan County in 1986. A fire broke out at their residence sometime before noon on May 1 while defendants were not at home. Fire fighters, called to the scene by defendants' neighbors, brought the fire under control by approximately 2:00 p.m.

After extinguishing the fire, fire fighters at the scene were unable to determine the cause of the fire and attempted to locate a state fire marshal. The state fire marshal and his designated subordinates are required and authorized to enter fire damaged buildings to investigate the causes and circumstances of fires. Iowa Code §§ 100.1(2), .2, .10.

At approximately 2:40 p.m., Buchanan County sheriff Leonard Davis learned of the fire fighters' attempt to locate a fire marshal. Although his presence was not requested by fire officials, he drove to the fire scene.

When sheriff Davis arrived, fire fighters were still in the house searching for smoldering areas which could reignite the fire. Davis observed that there were other outbuildings on the farm, but only the residence was smoldering or showed signs of fire damage.

One of the fire fighters on the scene mentioned to sheriff Davis that the house "seemed pretty well cleaned out for a place being lived in." Although no state fire investigator had yet arrived on the scene, Davis then entered the house and proceeded to search through various rooms on his own. He entered a bathroom that had not experienced fire damage and looked through the medicine cabinet, looked into a bedroom, noting that the dresser had no clothing in it, walked into a closet in the family room and surveyed the kitchen.

After the fire marshal arrived, Davis then proceeded to look around the outbuildings near the home. He noticed that one of the doors of a barn near the house was nailed shut and the other was padlocked. Walking around the barn, he located an undraped window and looked into the barn. Inside, he saw items that appeared to be personal items including a magazine rack with books in it, wooden crates containing canning jars, and house plants.

Unable to enter the barn on the ground floor, Davis climbed onto the roof of a small adjacent building and entered a second floor door of the barn. Descending through the haymow door inside the barn, Davis searched the inside of the barn. Many of the boxes he had observed from the outside of the barn were empty, others contained jars filled with canned goods. Davis also opened another smaller door inside the barn and found an aquarium containing a live turtle and a small "garden patch." On the second floor of the barn he found boxes of clothing, kitchen utensils and other personal items.

When sheriff Davis exited the barn, the defendants had arrived at the fire scene. Davis questioned defendants on the scene, and again later at the law center in Independence, Iowa, concerning the personal belongings in the barn. Unsatisfied with their answers, and having learned that the house was insured in excess of its value, Davis obtained a search warrant to seize the personal items in the barn as evidence.

His affidavit in support of the application for search warrant stated:

Affiant was contacted by the Quasqueton Fire Chief at approximately 2:40 p.m., on May 1, 1986, and advised of a suspicious house fire at a location approximately ¼ quarter mile north of Quasqueton, on Highway 282. Affiant examined the fire scene and confirmed that the origin of the fire appeared suspicious. Affiant also noted that items such as kitchen ware, food articles, toiletries, and clothing were missing from the house. A State Fire Marshal, Richard Ward, examined the scene on the evening of May 1 and advised affiant that the fire was a possible arson fire. Affiant checked the hay loft of a barn on the property and found numerous articles such as kitchen ware, food articles, toiletries, and clothing. Affiant questioned the occupants of the house about the presence of these articles in the barn and found their explanations to be inconsistent and unsatisfactory. Affiant has further learned that the house is insured for many times its actual value, and that the owner of the property is currently in financial difficulty.

Defendants moved to have all evidence seized pursuant to this search warrant suppressed because the information gathered by sheriff Davis to support the warrant was discovered in violation of defendants' fourth amendment rights under the United States Constitution, and in violation of article I, section 8, of the Iowa Constitution. Their motions were overruled, and this discretionary review followed. *See* Iowa Code § 814.5(2)(a).

■ When there is an alleged denial of constitutional rights, we make our own evaluation of the totality of the circumstances in a de novo style review. *Polly v. State*, 355 N.W.2d 849, 854 (Iowa 1984). Although defendants assert constitutional violations under both the state and federal search and seizure clauses, the language of those clauses is substantially identical and we have consistently interpreted the scope and purpose of article I, section 8, of the Iowa Constitution to track with federal interpretations of the Fourth Amendment. *Kain v. State*, 378 N.W.2d 900, 902 (Iowa 1985); *State v. Groff*, 323 N.W.2d 204, 207–08 (Iowa 1982).

■ II. *Validity of warrant used to seize evidence.* A warrant, issued upon an application supported by the affidavit of sheriff Davis, was obtained to seize defendants' personal property and household items in the barn to be used as evidence in the arson trial against them. The information in Davis' affidavit was gathered during his warrantless search through defendants' residence and barn. The question in this appeal is whether the evidence gathered by sheriff Davis to serve as probable cause for issuance of the warrant was tainted by constitutional violations.

When an affidavit in support of an application for search warrant contains unlawfully obtained information, the validity of the warrant and the subsequent search or seizure depends on whether there is sufficient untainted information which, when considered by itself, will establish probable cause for the warrant to issue. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *State v. Walker*, 352 N.W.2d 239, 243–44 (Iowa 1984); *accord State v. Hagen*, 258 Iowa 196, 205, 137 N.W.2d 895, 900 (1965) (evidence seized under warrant issued on basis of illegal entry is inadmissible and the evidence thereby observed is to be excluded).

A. *Sheriff's entry into the barn.* A substantial portion of the information submitted by the sheriff in his affidavit was gathered after he entered the barn through the second story door. He had not obtained a search warrant before entering the barn. Warrantless searches are per se unreasonable unless they fall within one of the carefully drawn exceptions to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. Eubanks*, 355 N.W.2d 57, 58 (Iowa 1984); *cf. Hagen*, 258 Iowa at 204–05, 137 N.W.2d at 899–901 (sheriff's warrantless entry into defendant's locked house held unreasonable where defendant was in jail and could not flee, or remove or

destroy evidence, residence was not movable, and search not incident to arrest).

The State does not argue that there is an applicable exception allowing sheriff Davis' warrantless entry into the barn, nor can we find one as we view the totality of the circumstances. The State, however, asks that we remand this case to allow the trial court to consider the present record and any necessary additional evidence in light of the Supreme Court's recent decision in *United States v. Dunn,* 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), decided after the defendants' motions to suppress were ruled upon.

We believe that *Dunn* is not pertinent to the question before us. In *Dunn* the court was concerned with the concept of curtilage and examined various factors which help determine when a barn is within the curtilage of a farm home. Activities carried on within the home's curtilage are protected from government intrusion because there are some activities carried on outside the actual walls of the home that are so intimately tied to the private activities of the home that society is prepared to recognize an expectation of privacy in those activities. *Id.* at 300, 107 S.Ct. at 1139, 94 L.Ed.2d at 334. The police in the *Dunn* case looked into the defendant's barn without entering it and then obtained a search warrant to seize evidence based upon what they saw inside the barn. The Court, characterizing defendant's barn as part of his open fields [1] rather than as part of his home's curtilage, found that the intrusion of merely looking through the open barn door did not violate the barn owner's Fourth Amendment rights.

The issue in the present case, however, is whether defendants had an expectation of privacy in their barn independent from the home.

In response to defendant's assertion in *Dunn* that he possessed an expectation of privacy in his barn independent from the home's curtilage the Court stated:

We may accept, for the sake of argument, respondent's submission that his barn enjoyed Fourth Amendment protection and could not be entered and its contents seized without a warrant. But it does not follow on the record before us that the officers' conduct [peering into the barn from the open fields] and the ensuing search and seizure [executed pursuant to a warrant] violated the Constitution.

*Id.* at 303–04, 107 S.Ct. at 1140–41, 94 L.Ed.2d at 336.

Although the *Dunn* majority focused particular attention on the fact that the officers did not enter defendant's barn, the Court stopped short of saying that the defendant's barn enjoyed an independent expectation of privacy separate from the home. Our past decisions, as well as those of the Supreme Court, however, clearly indicate that such independent expectations of privacy can exist.

In this oft quoted phrase from the *Katz* decision, the Court explained the scope of the Fourth Amendment:

[T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private even in an area accessible to the public, may be constitutionally protected.

389 U.S. at 351–52, 88 S.Ct. at 511, 19 L.Ed.2d at 582 (citations omitted).

Explaining when constitutional protections apply to an individual's attempt to preserve privacy in *State v. Flynn,* 360 N.W.2d 762 (Iowa 1985), we stated:

The Fourth Amendment protects only against the government's intrusion upon a person's legitimate expectation of privacy. The correct test of legitimacy is not whether the individual has chosen to

---

1. The Supreme Court stated in *Oliver v. United States,* 466 U.S. 170, 178, 104 S.Ct. 1735, 1741, 80 L.Ed.2d 214, 224 (1984), that areas "out of doors in fields, except in the area immediately surrounding the home" are "open fields." The court held that "the asserted expectation of privacy in open fields is not an expectation that society recognizes as reasonable." *Id.* at 179, 104 S.Ct. at 1741–42, 80 L.Ed.2d at 224–25.

conceal some private activity but "whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment." *Id.* at 764–65 (citations omitted) (quoting *Oliver v. United States*, 466 U.S. 170, 182–83, 104 S.Ct. 1735, 1741, 80 L.Ed.2d 214, 227 (1984)).

Whether expectations of privacy are reasonable involves "reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Rakas v. Illinois*, 439 U.S. 128, 143–44, n. 12, 99 S.Ct. 421, 430–31, 58 L.Ed.2d 387, 401 (1978); *cf. State v. Tarantino*, 83 N.C.App. 473, 350 S.E.2d 864 (1986), *remanded for further review in light of U.S. v. Dunn*, 319 N.C. 409, 354 S.E.2d 727 (1987), *aff'd*, 86 N.C.App. 441, 358 S.E.2d 131, *appeal filed*, 320 N.C. 797, 361 S.E.2d 86 (1987) (post-*Dunn* decision finding officers entry of enclosed porch to look through cracks in wall of house violated reasonable expectation of privacy).

We find that important Fourth Amendment privacy interests were at stake in this case. The barn containing defendants' possessions was locked and nailed shut. In *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), the Court found that an individual had a reasonable expectation of privacy in a double-locked footlocker in the trunk of his automobile even after that trunk was removed from his car. The Court said, "No less than one who locks the doors of his home against intruders, one who safeguards his personal possessions in this manner is due the protection of the Fourth Amendment Warrant Clause." *Id.* at 11, 97 S.Ct. at 2483, 53 L.Ed.2d at 548; *see also United States v. Place*, 462 U.S. 696, 706–07, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110, 120–21 (1983) (allowing brief detention of luggage for "canine-sniff" test, but affirming *Chadwick* holding that locked luggage may not be opened without a warrant absent exigencies).

We see no reason to give less protection to a locked barn on a farm residence than is given to a locked trunk in a car. Whether or not the barn was in the curtilage of the home, having nailed and locked shut the barn doors, defendants clearly sought to preserve the contents as private. It is our conclusion that this expectation is one which society recognizes as objectively reasonable and legitimate.

Those portions of sheriff Davis' affidavit which refer to information learned while Davis was searching through the inside of the barn are constitutionally tainted and cannot be used to support probable cause for issuance of the warrant.

Removing that portion of the affidavit gathered from the sheriff's illegal entry into the barn, there is still evidence learned by the sheriff during his search of the interior of the home which might have been sufficient to support the warrant.

■■■ B. *Entry of the fire-damaged residence.* There is no diminution in the reasonable expectation of privacy in the home nor in the protection of the Fourth Amendment simply because a premises is damaged by fire. *Michigan v. Tyler*, 436 U.S. 499, 506, 98 S.Ct. 1942, 1948, 56 L.Ed. 2d 486, 496 (1978). Warrantless entries into a home by government authorities are no more reasonable, in the absence of exigent circumstances, because a fire has recently occurred.

This is not to say that fire fighters need to obtain a warrant in every case to search through a fire damaged house for the cause of the fire. As the Supreme Court stated in summarizing its holding in *Tyler:*

> [W]e hold that an entry to fight a fire requires no warrant, and that once in the building, officials may remain there for a reasonable time to investigate the cause of the blaze. Thereafter, additional entries to investigate the cause of the fire must be made pursuant to the warrant procedures governing administrative searches.

*Id.* at 511, 98 S.Ct. at 1951, 56 L.Ed.2d at 500; *see also State v. Hansen*, 286 N.W.2d 163, 167 (Iowa 1979) (statutory authorization for administrative search under Iowa Code section 100.10 (1978) not a constitutionally adequate substitute for a search warrant).

Absent exigent circumstances, however, a search to gather evidence of arson requires a warrant. *Michigan v. Clifford,* 464 U.S. 287, 297, 104 S.Ct. 641, 649, 78 L.Ed.2d 477, 486 (1984). When sheriff Davis arrived at the scene, he was told that the fire seemed suspicious. Without being asked to accompany any of the fire fighters, Davis entered the house and searched through various rooms, looking into cabinets and drawers. There were no exigent circumstances justifying his entry into the house. He stated in his affidavit that he entered the house to confirm for himself that the fire was possibly arson related.

The Iowa Code requires certain officials to investigate the cause of fires.[2] Iowa Code §§ 100.1(2), .2, .10. Law enforcement officers are not included among those listed. Where law enforcement officers are asked to accompany a fire investigation official in the investigation, there seems little reason to object to the presence of the officer in the premises. Yet "[t]he mere fact that a fire has occurred does not give police officers carte blanche to enter one's home, even when armed with probable cause to suspect that evidence of a crime may be within the premises." *United States v. Hoffman,* 607 F.2d 280, 283 (9th Cir.1979).

We hold that the information in sheriff Davis' affidavit learned from his entry into the house was gathered in violation of defendants' constitutional rights under the Fourth Amendment of the United States Constitution and Article I, Section 8, of the Iowa Constitution. That information cannot be considered in determining whether the warrant in question was valid.

III. *Disposition.* Removing the information learned in the search of defendants' house and barn from the application and affidavit for search warrant, no basis remains for probable cause to issue that warrant. All evidence seized pursuant to

2. Iowa Code § 100.2 (1985) reads:
   The chief of the fire department or the chief's designee of every city or township in which a fire department is established ... shall investigate into the cause, origin and circumstances of every fire occurring in the city or township by which property has been

execution of that warrant was, therefore, illegally seized, and should have been suppressed. The decision of the trial court overruling defendants' motions to suppress is reversed. The case is remanded for further appropriate proceedings.

REVERSED AND REMANDED.

destroyed or damaged ... and determine whether the fire was the result of natural causes, negligence or design. The state fire marshal may assist in the investigation or may direct the investigation if the fire marshal finds it necessary.