STATE OF NORTH CAROLINA v. MIKE CLAY CHURCH

No. 9223SC375

(Filed 15 June 1993)

1. **Searches and Seizures § 3 (NCI3d)— tip from informant— officers' presence on defendant's porch—no violation of expectation of privacy**

    Officers who had been told by a confidential informant that marijuana was being grown outside a particular white house were entitled to go to defendant's door to inquire about the matter and were not trespassers, and defendant's expectation of privacy in his yard was not violated by the officers' presence there.

    **Am Jur 2d, Searches and Seizures § 73.**

2. **Searches and Seizures § 33 (NCI3d)— search under plain view doctrine—inadvertence not requirement**

    Inadvertence is not a necessary condition of a lawful search pursuant to the "plain view" doctrine; therefore, officers who went to defendant's property without a warrant, suspecting that marijuana was grown there, could properly seize marijuana which they found growing in the yard pursuant to the plain view doctrine.

    **Am Jur 2d, Searches and Seizures § 161.**

**Applicability of "plain view" doctrine and its relation to Fourth Amendment prohibition against unreasonable searches and seizures—Supreme Court cases. 110 L. Ed. 2d 704.**

3. **Searches and Seizures § 1 (NCI3d)— key inserted into lock— peering through blocked garage windows—no unlawful search**

There was no merit to defendant's contention that officers committed an unlawful search of his garage because one officer inserted a key into the lock of that building and attempted to look through a window, thereby rendering the evidence later seized from the garage unlawful, since inserting a key into a lock and attempting, but being unable, to look through a window do not constitute an unlawful search.

**Am Jur 2d, Searches and Seizures § 37.**

4. **Criminal Law § 1497 (NCI4th)— search conducted by probation officer—assistance from police officers—warrantless search not illegal**

The presence and participation of police officers in a search conducted by a probation officer, pursuant to a condition of probation, does not, standing alone, render the search invalid. Evidence in the case tended to establish that defendant's probation officer conducted the search of defendant's premises with the assistance of the officers, and the search therefore met the requirements of N.C.G.S. § 15A-1343(b1)(7).

**Am Jur 2d, Criminal Law § 576.**

Appeal by defendant from judgment entered 12 December 1991, in Wilkes County Superior Court by Judge William H. Freeman. Heard in the Court of Appeals 1 April 1993.

On 16 September 1992, a grand jury indicted defendant on charges of maintaining a dwelling for keeping a controlled substance, in violation of N.C. Gen. Stat. § 90-108(a)(7) (1990); manufacturing marijuana, in violation of N.C. Gen. Stat. § 90-95(a)(1) (1990); and possession of marijuana with intent to sell and deliver, in violation of N.C. Gen. Stat. § 90-95(a)(1) (1990). Pursuant to N.C. Gen. Stat. § 15A-945 (1988), defendant waived arraignment and entered pleas of not guilty to all charges. Thereafter he filed a motion to suppress evidence which was seized without a search warrant from defendant's residence, property, and outbuildings. After the trial judge denied defendant's motion, on 12 December 1991, defendant withdrew

his pleas of not guilty and pleaded guilty to all charges. From the denial of the motion to suppress, defendant appeals pursuant to N.C. Gen. Stat. § 15A-979 (1988).

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Robin P. Pendergraft, for the State.*

*Vannoy, Colvard, Triplett & McLean, by Howard C. Colvard, Jr. and Anthony R. Triplett, for defendant appellant.*

McCRODDEN, Judge.

In his only assignment of error, defendant contends that the trial court erred in denying his motion to suppress the evidence seized from his residence, premises, and outbuildings. This assignment of error requires us (I) to review the law enforcement officers' actions in discovering defendant's marijuana in plain view and, in so doing, to revisit, in light of *Horton v. California*, 496 U.S. 128, 110 L.Ed.2d 112 (1990), whether items seized under the "plain view" doctrine must be discovered inadvertently; (II) to determine whether a law enforcement officer who had no warrant conducted an illegal search when he inserted a key into a lock and attempted to look through a window; and (III) to decide whether officers performed an unlawful search of defendant's premises when, instead of obtaining a search warrant, they asked defendant's probation officer to search, and they assisted the probation officer in searching, defendant's premises as permitted under a condition of defendant's probation.

At the hearing on defendant's motion to suppress, the State's evidence tended to show that on 18 September 1990, a confidential informant told Special Agent Robert Risen ("Agent Risen") of the North Carolina State Bureau of Investigation that marijuana was being grown outside a white frame house located behind C & J Oil Company in Miller's Creek. Prior to this occasion, the informant had never provided information to Agent Risen.

On 19 September 1990, at 3:30 p.m., Agent Risen and Special Agent Jeff Sellers ("Agent Sellers") drove to Miller's Creek to conduct a general investigation of the area. At Miller's Creek the agents discovered a white frame house and a second house with wood siding, which was located approximately 150 feet west of the white frame house. The agents walked to the front porch of the white house, knocked on the door, and received no answer.

From the front porch, they observed two marijuana plants growing along a fence that ran from the white house to another residence east of the white house and a third marijuana plant growing directly behind the second house. All plants were about eight feet tall and were growing in the yard between the white frame and wood sided houses.

After observing the marijuana plants, the agents walked to the second house to determine who lived in the houses. Agent Sellers knocked on the front and side doors and then observed the defendant walk from the garage, which was adjacent to the second house. When asked whether he had come from the garage, the defendant denied having been inside the garage. Defendant informed the agents that he owned both houses, but lived in the second house. The agents, having no warrant, asked defendant if they could search the houses and garage, but he refused.

After placing defendant under arrest, the agents asked him for a garage door key, which defendant produced. Agent Risen inserted the key in the lock, found that it fit, and withdrew the key without opening the door. While there, Agent Risen attempted to look through the side windows of the garage, but was unable to see inside because the windows were blocked.

While Agent Sellers remained at the defendant's house, Agent Risen transported the defendant to the county jail and began working on an application for a search warrant. After receiving information from another officer that defendant was currently on probation, Agent Risen contacted the probation officer, Sandra Rankin, who confirmed that the defendant was on supervised probation and that, as a condition of that probation, the defendant was obligated to consent to warrantless searches by a probation officer.

Agent Risen informed Ms. Rankin that he had discovered marijuana plants growing outside defendant's house, and he asked Ms. Rankin if she would be interested in conducting a search of the defendant's premises pursuant to the special conditions of probation. Ms. Rankin stated that she would be willing to conduct a warrantless search if she saw marijuana growing outside the defendant's house and determined that the plants more than likely belonged to the defendant. Although she had visited defendant's residence three times, Ms. Rankin had no plans to search the defendant's property prior to 19 September 1990.

Agent Risen ceased his application for a search warrant, and he, Ms. Rankin, and the defendant returned to the defendant's residence. Once there, Ms. Rankin saw the marijuana plants, determined that the plants probably belonged to the defendant, and authorized a search of defendant's premises. Ms. Rankin and nine law enforcement officers conducted the search during which Ms. Rankin discovered additional marijuana plants in the garage, a rifle in the defendant's bedroom, and six baggies of marijuana in the kitchen.

I.

Defendant contends that within this factual setting there were three violations of his Fourth Amendment rights. First, although he does not contest that the marijuana plants growing in his yard were in plain view, defendant contends that the evidence of those plants should be suppressed because Agents Risen and Sellers entered his property without a warrant and because the officers did not discover the plants inadvertently.

In *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L.Ed.2d 564, *reh'g denied*, 404 U.S. 874, 30 L.Ed.2d 120 (1971), the United States Supreme Court held that under certain circumstances, law enforcement officers may seize evidence in plain view without a search warrant. Following *Coolidge*, North Carolina courts have held that police may, without a warrant, seize evidence which is in plain view if three requirements are met. "First, the initial intrusion which brings the evidence into plain view must be lawful. Second, the discovery of the incriminating evidence must be inadvertent. Third, it must be immediately apparent to the police that the items observed constitute evidence of a crime, are contraband, or are otherwise subject to seizure." *State v. Williams*, 315 N.C. 310, 317, 338 S.E.2d 75, 80 (1986) (citation omitted). We confine our analysis to what the courts heretofore have interpreted as the three requirements resulting from *Coolidge*.

[1] Defendant's first contention relates to the first requirement and is that, since he had a reasonable expectation of privacy in his yard, the officers' warrantless entry onto his property violated that expectation and was unlawful. We disagree. In *State v. Prevette*, 43 N.C. App. 450, 455, 259 S.E.2d 595, 599-600 (1979), *disc. review denied*, 299 N.C. 124, 261 S.E.2d. 925-26, *cert. denied*, 447 U.S. 906, 64 L.Ed.2d 855 (1980), this Court held that, when officers enter private property for the purpose of a general inquiry or interview,

their presence is proper and lawful. The Court further stated that "officers are entitled to go to a door to inquire about a matter; they are not trespassers under these circumstances." *Id.* In that case, the Court upheld the denial of defendant's motion to suppress marijuana found in defendant's house when the evidence showed that officers received an anonymous tip that a house near a dairy farm was full of marijuana; that after deciding the information was not sufficient to obtain a search warrant, they went to the area to conduct a general investigation and, while standing on the front porch, discovered marijuana in defendant's house in plain view. *Id.* at 453, 259 S.E.2d at 598. The facts of the case before us are sufficiently analogous to those of *Prevette* for that case to control our determination that the entry onto defendant's property was lawful.

[2] With regard to what has been interpreted as the second requirement of the "plain view" doctrine, that of inadvertency, we believe that *Horton v. California* answers defendant's argument, not posed by *Coolidge*, of whether discovery of items, which law enforcement officials suspect but which are not named in a search warrant, may ever be inadvertent. In *Horton*, a law enforcement officer filed an affidavit for a warrant to search the home of Horton who was suspected of armed robbery. Although the officer's affidavit referred to police reports that described the weapons used in the robbery as well as the proceeds of the robbery, the warrant only authorized a search for the proceeds. The officer acknowledged in his testimony that, as he searched for the proceeds, he was also interested in finding other evidence which would connect Horton with the robbery. Indeed, he did find in plain view, and he seized, weapons that he believed were associated with the robbery. As the Supreme Court noted, the items were not discovered inadvertently, and the Court faced the issue of whether the items were seized illegally and were, therefore, inadmissible as evidence against Horton.

Noting that former Justice Stewart's analysis of the "plain view" doctrine in *Coolidge* did not receive the support of a majority of the Court, the *Horton* Court determined that the inadvertency limitation was not necessary to the result reached in that case. *Id.* at 137, 110 L.Ed.2d at 123. So long as a law enforcement officer confines his search to the area and duration set by a warrant or a valid exception to the warrant requirement, "no additional Fourth Amendment interest is furthered by requiring that the

discovery of evidence be inadvertent." *Id.* at 140, 110 L.Ed.2d at 125. *Horton* thus has eliminated as a requirement for the "plain view" doctrine that officers discover items of contraband inadvertently. We follow *Horton* and find that inadvertence is not a necessary condition of a lawful search pursuant to the "plain view" doctrine.

The State's evidence clearly met the other requirement of the "plain view" doctrine, that the officers immediately recognize the item (marijuana) as a contraband substance. We conclude, therefore, that the officers were lawfully present on the defendant's property and that, even though they had gone to defendant's premises suspecting that defendant was growing marijuana, the subsequent seizure of the marijuana was authorized by the "plain view" doctrine.

## II.

[3] In the second argument supporting his assignment of error, defendant contends that the officers committed an unlawful search of his garage because Officer Risen inserted a key into the lock of that building and attempted to look through a window, thereby rendering the evidence later seized from the garage unlawful. Again, we disagree. Assuming *arguendo* that defendant had an expectation of privacy in the garage, the officer's actions do not constitute an unlawful search. Agent Risen did not open the garage door; instead he inserted the key in the lock, found that it fit, and withdrew the key. His attempt to peer in the garage through side windows was unsuccessful, because the windows were blocked. Inserting a key into a lock and attempting, but being unable, to look through a window do not constitute an unlawful search.

Defendant cites *State v. Tarantino*, 86 N.C. App. 441, 358 S.E.2d 131, *disc. review denied*, 320 N.C. 797, 361 S.E.2d 86 (1987), *and aff'd*, 322 N.C. 386, 368 S.E.2d 588 (1988), as support for his contention that the officers impermissibly invaded an area in which he had an expectation of privacy. The *Tarantino* Court held that an officer impermissibly invaded defendant's right to privacy when the officer entered defendant's enclosed porch without a warrant, bent his body to look through a crack about three feet from the porch floor, and viewed contraband from this vantage point. *Tarantino*, however, is not on point. In the case before us, the officer's actions do not constitute an unlawful search because the garage door was never opened and the windows were blocked so that the officer never observed any of the marijuana later discovered.

III.

[4] Finally, defendant contends that the officers performed an unlawful warrantless search of his premises. Defendant concedes that, as a condition of his probation, he was properly required to submit to warrantless searches conducted in a lawful manner by his probation officer. N.C. Gen. Stat. § 15A-1343(b1)(7) (1988); *State v. McCoy*, 45 N.C. App. 686, 691, 263 S.E.2d 801, 804-05, *disc. review denied*, 300 N.C. 377, 267 S.E.2d 681 (1980). Defendant argues, however, that the warrantless search was initiated and conducted by police officers, rather than his probation officer, and, therefore, the search was unlawful. We agree that a search pursuant to N.C.G.S. § 15A-1343(b1)(7) cannot be conducted by law enforcement officers, but must be conducted by a probation officer. *State v. Grant*, 40 N.C. App. 58, 252 S.E.2d 98 (1979). However, the presence and participation of police officers in a search conducted by a probation officer, pursuant to a condition of probation, does not, standing alone, render the search invalid. *State v. Howell*, 51 N.C. App. 507, 509, 277 S.E.2d 112, 114 (1981). Evidence presented at defendant's hearing tended to establish that the probation officer conducted the search of defendant's premises *with the assistance of the officers*. Indeed, the evidence establishes that Ms. Rankin withheld her commitment to search the premises until she had seen the marijuana plants growing outside the buildings and had determined that they more than likely belonged to the defendant.

The trial court found as fact that Ms. Rankin "searched the [d]efendant's garage and residence . . . [and] was assisted in that search by Agent Risen and several other officers." A court's findings, when supported by competent evidence in the record, should not be disturbed on appeal, *Prevette*, 43 N.C. App. at 452, 259 S.E.2d at 598, and we decline to do so.

Defendant's three arguments attacking the trial court's denial of his motion to suppress fail, and we affirm the judgment.

Affirmed.

Judges JOHNSON and ORR concur.