An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-941

Filed 1 October 2025

Haywood County, No. 22CRS051207-430

STATE OF NORTH CAROLINA

v.

CODY ALLEN MINTZ, Defendant.

Appeal by defendant from judgment entered 14 May 2024 by Judge Gregory R. Hayes in Haywood County Superior Court. Heard in the Court of Appeals 6 August 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Robert T. Broughton, for the State.*

> *Andrew Nelson for defendant-appellant.*

PER CURIAM.

Defendant Cody Allen Mintz appeals from judgment entered upon his guilty plea to one count of driving while impaired. On appeal Defendant argues the trial court erred by failing to grant his pre-trial motion to suppress.

I.     Background

On 22 May 2022, Trooper Luke Pate spotted Defendant's vehicle traveling with

an expired tag. Trooper Pate followed Defendant's vehicle, without turning on his blue lights, until Defendant pulled into the driveway of his grandmother's home. Defendant exited his vehicle and soon after Trooper Pate pulled into the driveway as well. The State admits that at no point did Trooper Pate initiate a traffic stop and that he pulled into Defendant's driveway just to talk with him and "explain" his expired tag.

Trooper Pate approached Defendant and informed him why he was there, and that the vehicle's tag had come back expired. During this interaction Trooper Pate noticed Defendant had a strong odor of alcohol on his breath, appeared lethargic, was unsteady on his feet, slurring his speech, and had glassy eyes. Defendant admitted he had consumed some alcohol. Trooper Pate administered a horizontal gaze nystagmus test, a Romberg balance test, and portable breath test on Defendant. Based on Defendant's results from these field sobriety tests, Trooper Pate arrested and charged Defendant with driving while impaired.

In Haywood County District Court, Defendant pleaded guilty and was sentenced as a level 1 offender. Defendant then appealed to superior court, where his motion to suppress evidence gathered by Trooper Pate in the driveway was denied. Defendant then pleaded guilty again, conditional on his ability to appeal the trial court's ruling on the motion to suppress.

## II. Analysis

On appeal, Defendant argues his Fourth Amendment rights were violated by

Trooper Pate. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. However, there is an "implied license for visitors to 'approach the home by the front path[.]'" *State v. Smith*, 246 N.C. App. 170, 177 (2016) (quoting *Florida v. Jardines*, 569 U.S. 1, 8 (2013)). This implied license applies to law enforcement just as it does to any other citizen, and they may approach a home by the front path. *Jardines*, 569 U.S. at 8. Law enforcement in North Carolina utilize this license by conducting "knock and talk" inquiries that do not "rise to the level of a Fourth Amendment search." *Smith*, 246 N.C. App. at 177.

Defendant argues Trooper Pate's conduct exceeded the limits of a "knock and talk" inquiry. This court has held "when officers enter private property for the purpose of a general inquiry or interview, their presence is proper and lawful." *State v. Church*, 110 N.C. App. 569, 573–74 (1993). General inquiry or interview includes the purpose of conducting "basic questioning." *See Smith*, 246 N.C. App. at 179.

In *Smith*, law enforcement ventured onto the defendant's property to investigate a report of a car being shot at from the property. *Id.* at 172. Officers approached the home by the driveway, and the defendant came out of the house to speak with them. *Id.* at 172–73. In the course of their conversation, the officers asked the defendant about his knowledge of the reported shooting and if he owned any firearms. *Id.* The officers received consent to search the residence for a firearm involved in the shooting and successfully located the firearm in question. *Id.* at 173.

The defendant was charged and at trial moved to suppress the evidence law enforcement gathered during their visit. *Id.* at 174. This court concluded law enforcement's actions did not exceed the scope of "knock and talk" visits because their questions were "reasonable and germane" to the purpose of making a general inquiry about the shooting. *Id.* at 179–80.

Defendant argues that *Collins v. Virginia*, 584 U.S. 586 (2018) should control. However, the facts of *Collins* do not align. In *Collins*, law enforcement entered onto private property—without interacting with the resident or obtaining the resident's permission to search the premises—to gather physical evidence of a suspected crime. *Id.* at 589–90.

*Smith* controls and is most analogous to the present case's facts because it involves a one-on-one interaction with law enforcement, demonstrating the acceptable scope of a "knock and talk" visit. Trooper Pate approached the home by the driveway and engaged in conversation with Defendant about the expired tag observed. This initial interaction, similar to the questioning in *Smith,* falls squarely in the scope of a "knock and talk" and doesn't go beyond the "basic questioning" allowed.

Because Trooper Pate's presence was a "knock and talk" visit, his observations of Defendant's inebriation were proper. Trooper Pate's observations that Defendant had glassy eyes, had a strong odor of alcohol on his breath, admitted to consuming alcohol, and exhibited signs of impairment across multiple sobriety tests established

that adequate probable cause was present to arrest Defendant. *State v. Parisi*, 372 N.C. 639, 653 (2019).

### III.    Conclusion

Trooper Pate's presence at the residence of Defendant was lawful and proper as a "knock and talk" visit. Thus, we affirm the trial court's judgment.

AFFIRMED.

Panel consisting of Chief Judge DILLON and Judges GORE and CARPENTER.

Report per Rule 30(e).