STATE OF NORTH CAROLINA v. BARRY NELSON McCOY

No. 7915SC784

(Filed 18 March 1980)

Criminal Law § 142.3— submission to physical tests—probation condition reasonable—no improper search

A condition of defendant's probation requiring him to submit to physical testing or examination at the request of his probation officer for the detection of drugs or controlled substances was directly related to and grew out of the offense for which defendant was convicted and was therefore reasonable, and it was not an invalid condition of probation under G.S. 15A-1343(b)(15).

APPEAL by the State of North Carolina from *McKinnon, Judge.* Order entered 3 May 1979 in Superior Court, CHATHAM County. Heard in the Court of Appeals 18 January 1980.

This is an appeal by the State of North Carolina from an order of the court suppressing evidence discovered as a result of an examination and test of probationer's blood and urine for the detection of controlled substances pursuant to a condition of his probation and the court's determination that such search is not permitted as a valid and enforceable condition of probation.

*Attorney General Edmisten, by Assistant Attorney General J. Michael Carpenter, for the State.*

*Cheshire, Bruckel & Swann, by William J. Bruckel, Jr., for the defendant.*

MARTIN (Robert M.), Judge.

In its order of 3 May 1979 the Court made the following findings of fact:

1. That, at the December 5, 1977, Session of Orange County Superior Court, before the undersigned Judge of Superior Court, presiding, the defendant entered a plea of guilty to the felony of obtaining a controlled substance, hydromorphone (Dilaudid) by use of an altered or forged prescription and was sentenced to the custody of the North Carolina Department of Corrections for a period of five (5) years, which was suspended, and the defendant was placed on probation for a period of five (5) years. Furthermore that, at the June 29, 1978 Session of Chatham County Superior Court, before the Honorable Robert L. Farmer, Judge presiding, the defendant was convicted of the felony of possession of 3, 4 methylenedioxyamphetamine (MDA) with intent to sell or deliver and was sentenced to the custody of the North Carolina Department of Corrections for a period of not less than five (5) years nor more than seven (7) years, which was suspended, and the defendant was placed on probation for a period of five (5) years. The defendant has been under the supervision of Officer Crouse since entry of these judgments.

2. That, a special condition of the probationary judgment entered in Orange County in case 77CRS6986 was ". . . that the defendant not use or possess any controlled substance except with a valid prescription of a physician."

3. That, a special condition of the probationary judgment entered in Chatham County in case 76CRS3689 was ". . . that the defendant not have in his possession nor under his control any controlled substances unless duly prescribed by a physician or pharmacist; . . . that he submit to any physical test or examination at the request of his probation officer for the detection of drugs or controlled substances and pay the cost thereof; that he permit the search of his person or the place where he resides or any vehicle under his control by his probation officer upon request and without the necessity for a search warrant."

4. That, the special conditions of this judgment were announced to the defendant in open court at the time of entry of the judgment, and they were explained to defendant by the probation officer and he consented to the conditions of each judgment.

5. That, prior to February 12, 1979 the defendant had contacted Officer Crouse about a modification of a condition of probation to permit him to travel outside Chatham County for the purpose of seeking employment, and Officer Crouse had told him that he would have to go to court to seek a modification and that he should contact the district attorney. At about 8:30 a.m. on February 12, 1979 the defendant called Officer Crouse about his court date, and Officer Crouse detected that the defendant appeared to be incoherent and had difficulty in understanding the directions Officer Crouse gave. Thereafter at about 10:00 a.m. the defendant appeared in court and through his former attorney, Edward McLaurin, inquired about a hearing on his request for modification. From Officer Crouse's observation of the defendant in court and his manner of speech on the telephone, and from having previously observed other individuals who were admittedly under the influence of controlled substances, Mr. Crouse formed the opinion that the defendant might be under the influence of some drug, and he asked the district attorney and the court to defer hearing on the request in order that he might seek tests of the defendant, as permitted by the Chatham County probation judgment.

6. That, as a result of his observations, Mr. Crouse requested the defendant to accompany him to Haywood-Moncure Health Center for tests of his blood and urine, and the defendant accompanied Mr. Crouse to the clinic and submitted to the furnishing of samples of blood and urine to medical personnel there. Mr. Crouse's request and the defendant's submission to these tests was pursuant to the condition of the judgment in the Chatham County case. The samples obtained were properly identified and sent to the chemical laboratory of the State Bureau of Investigation for analysis and were there analyzed by SBI Chemist, McDade, and found to contain methaqualone (Quaalude), a Schedule II controlled substance.

7. That, the evidence of Mr. Crouse and Mr. McDade is sufficient to satisfy the court that the defendant on or about February 12, 1979, did possess and use a Schedule II controlled substance, methaqualone, and that he thereby wilfully violated a condition of his probation in each case.

8. That, the defendant had previously been found in violation of condition of his probation in the Orange County case by failing to attend school as required and by going outside of the geographical restrictions of the judgment, by order of Judge Gordon Battle on October 19, 1978, but he was then continued on probation.

9. That, if the evidence heard by this Court were admissible, the present violation, together with his previous violation, is sufficient to justify the revocation of probation and the activation of the sentences.

From its findings of fact the Court drew the following conclusions of law:

1. Officer Crouse had probable cause to believe that the defendant had used and possessed controlled substances on February 12, 1979, and to request an examination and test of the defendant's blood and urine pursuant to the condition of his probation in the Chatham County case.

2. This request and the examination and tests were made under the authority of this condition of probation, and the defendant's response to the request and his submission to the tests was a result of this condition of probation.

3. The Court is of the opinion that the requirements of this condition of probation constitute a search, and that by reason of the last sentence of G.S. § 15A-1343(b)(15) and the decision of the North Carolina Court of Appeals in *State v. Grant*, 40 N.C. App. 58 (1979), such a search is not permitted as a condition of probation.

4. Because of this statute and this opinion, the Court is of the opinion that the evidence of the defendant's use and possession of a Schedule II controlled substance was unlawfully obtained and may not be considered as proof that the defendant has violated the conditions of his probation,

and the defendant's Motion to Suppress the Evidence is allowed.

There being no admissible evidence of the defendant's violation of the conditions of probation charged, it is ORDERED that the defendant be continued on probation under the conditions of the probation judgment heretofore entered.

By its first assignment of error, the State contends the court erred in construing G.S. 15A-1343(b)(15) by finding invalid a condition of probation requiring him to submit to physical testing or examination at the request of his probation officer for the detection of drugs or controlled substances.

In the instant case, the probationer had been convicted of two prior felony controlled substance offenses. The condition requiring him to submit to physical testing or examination at the request of the probation officer were clearly directly related to and grew out of the offense for which the defendant was convicted. *See State v. Smith*, 233 N.C. 68, 62 S.E. 2d 495 (1950); *State v. Simpson*, 25 N.C. App. 176, 212 S.E. 2d 566, *cert. denied*, 287 N.C. 263, 214 S.E. 2d 436 (1975). It was designed to insure that the defendant would not use or possess illegal controlled substances during his probationary period and to further his reform. We do not think such a condition is unreasonable.

The trial court found that these conditions requiring the defendant to submit to physical testing for the detection of controlled substances to be invalid, apparently reasoning that it would be a "search that would otherwise be unlawful." The trial court also relied on this Court's holding in *State v. Grant*, 40 N.C. App. 58, 252 S.E. 2d 98 (1979), for its decision.

It is well settled that the United States Constitution is not violated by the requirement that a probationer submit to warrantless searches as a condition of probation. The courts of North Carolina and of other states, have approved of this condition. *State v. Montgomery*, 115 Ariz. 583, 566 P. 2d 1329 (1977); *People v. Mason*, 5 Cal. 3d 759, 97 Cal. Rptr. 302, 488 P. 2d 630 (1971), *cert. denied* 405 U.S. 1016, 92 S.Ct. 1289, 31 L.Ed. 2d 478 (1972); *Huffman v. United States*, 259 A. 2d 342 (D.C. App. 1969), aff'd 152 App. D.C. 238, 470 F. 2d 386 (1971), *on reh.* 163 App. D.C. 417, 502 F. 2d 419 (1974); *People v. Fortunato*, 50 A.D. 2d 38, 376

N.Y.S. 2d 723 (1975); *State v. Mitchell,* 22 N.C. App. 663, 207 S.E. 2d 263 (1974); *State v. Schlosser,* 202 N.W. 2d 136 (N.D. 1972).

In *State v. Craft,* 32 N.C. App. 357, 360, 232 S.E. 2d 282, 285, *cert. denied,* 292 N.C. 642, 235 S.E. 2d 63 (1977), we said:

> The Fourth Amendment generally requires a warrant for a search or seïzure, but a party may waive this requirement and consent to the search or seizure. *State v. Allen,* 282 N.C. 503, 194 S.E. 2d 9 (1973).

As a condition to probation, defendant had waived his right to be free from warrantless searches conducted in a lawful manner by his probation officer. *State v. Mitchell,* 22 N.C. App. 663, 207 S.E. 2d 263 (1974).

We think the statement in *People v. Mason,* 5 Cal. 3d 759, 764-65, 97 Cal. Rptr. 302, 488 P. 2d 630, 633 (1971), *cert. denied* 405 U.S. 1016, 92 S.Ct. 1289, 31 L.Ed. 2d 478 (1972), is particularly applicable to the instant case:

> [P]ersons conditionally released to society . . . may have a reduced expectation of privacy, thereby rendering certain intrusions by governmental authorities "reasonable" which otherwise would be invalid under traditional constitutional concepts, at least to the extent that such intrusions are necessitated by legitimate governmental demands. (Citations omitted) Thus, a probationer who has been granted the privilege of probation on condition that he submit at any time to a warrantless search may have no reasonable expectation of traditional Fourth Amendment protection.

G.S. 15A-1343(b)(15) removed the authority of police officers to conduct such searches. In *State v. Grant,* 40 N.C. App. 58, 252 S.E. 2d 98 (1979), this Court held only that the requirement that probationer submit to a warrantless search by law enforcement officers, *not his probation officer,* was invalid. The official commentary to G.S. 15A-1343 states:

> This section specifies a number of conditions of probation, primarily ones that will be used fairly frequently, that may be imposed. The list is meant neither to be exclusive nor to suggest that these conditions should be imposed in all cases. Condition (15), dealing with searches, recognizes that the

ability to search a probationer in some instances is an essential element of successful probation. It includes two important limits: (1) only a probation officer, and not a law-enforcement officer, may search the probationer under this condition, and (2) the search may be only for purposes reasonably related to the probation supervision.

A warrantless search of the person of the probationer, for purposes reasonably related to his probation supervision, was accomplished by Probation Officer Crouse at the Haywood-Moncure Multipurpose Center. The Probation Officer's actions were neither unreasonable nor did it result in an unlawful search of the person of the probationer. *See State v. Robledo,* 116 Ariz. 346, 569 P. 2d 288 (1977); *State v. Culbertson,* 29 Or. App. 363, 563 P. 2d 1224 (1977). The evidence derived from the testing of probationer's blood was admissible and the court erred in excluding it. For the foregoing reasons this matter must be remanded to the trial court for further hearing and disposition in accordance with this opinion.

Remanded.

Judges ERWIN and WELLS concur.