IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-1022

 Filed: 16 May 2017

Catawba County, No. 15 CRS 3027

STATE OF NORTH CAROLINA

 v.

DANNY WAYNE POWELL, JR.

 Appeal by defendant from judgment entered 14 December 2015 by Judge

Richard D. Boner in Catawba County Superior Court. Heard in the Court of Appeals

4 April 2017.

 Attorney General Joshua H. Stein, by Assistant Attorney General James D.
 Concepcion and Assistant Attorney General Sherri Horner Lawrence, for the
 State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Jillian C.
 Katz, for defendant-appellant.

 DAVIS, Judge.

 This case requires us to determine whether a warrantless search of a

probationer’s home was “directly related” to the supervision of his probation as

required by N.C. Gen. Stat. § 15A-1343(b)(13). Danny Wayne Powell, Jr.

(“Defendant”) appeals from his conviction for possession of a firearm by a felon and

argues that the trial court erred in denying his motion to suppress evidence found

during a search of his residence. Because the State failed to meet its burden of
 STATE V. POWELL

 Opinion of the Court

demonstrating that the warrantless search was authorized by N.C. Gen. Stat. § 15A-

1343(b)(13), we reverse the trial court’s order denying Defendant’s motion to suppress

and vacate his conviction.

 Factual and Procedural Background

 On 23 September 2013, Defendant was convicted of felony breaking or entering

and sentenced to 6 to 17 months imprisonment. This sentence was suspended, and

he was placed on supervised probation for 30 months. At all times relevant to this

appeal, he was living in Catawba County.

 In March of 2015, Officers Sarah Lackey and Travis Osborne were Probation

and Parole officers in Catawba County employed by the North Carolina Department

of Public Safety. On 4 March 2015, Officers Lackey and Osborne “were conducting

an operation with the U.S. Marshal’s task force service.” They were working with

Investigator Gary Blackwood of the Street Crime Interdiction and Gang Unit of the

Hickory Police Department, Officer Jamie Carey of the North Carolina Department

of Public Safety, and “two or three . . . U.S. Marshals.” These officers were “part of

[an] operation” conducting searches of “seven or eight” residences of individuals who

were on probation, parole, or post-release supervision in a particular geographic area

of Catawba County. The members of the task force utilized a list of probationers

provided by the supervisor of Officers Lackey and Osborne. Although Officer Lackey

testified at trial that “[t]he list . . . was targeting violent offenses involving firearms

 -2-
 STATE V. POWELL

 Opinion of the Court

[and] drugs[,]” she acknowledged during the suppression hearing that “not all

offenders that were selected had that criteria.” Defendant’s name, address, and

status as a probationer was contained on the list provided to the task force. Neither

Officer Lackey nor Officer Osborne was the probation officer assigned to Defendant.

 At approximately 9:30 p.m. that night, the officers arrived at Defendant’s

residence. Officer Osborne knocked on the front door while Investigator Blackwood

and another officer went to the back corner of the house to ensure that no one exited

the residence. When Defendant answered the door, Officer Osborne asked him if he

was Danny Powell, and Defendant responded affirmatively. Officer Osborne then

placed Defendant in handcuffs and directed him to sit down at the kitchen table.

Defendant’s wife — who was eight months pregnant at the time — also remained in

the kitchen along with Defendant’s father.

 Officer Osborne asked if there were any firearms in the house, and Defendant’s

wife responded that there was a firearm in the bedroom closet. Officer Osborne

remained with Defendant in the kitchen while the other officers went to retrieve the

firearm.

 While searching the bedroom closet upstairs, Investigator Blackwood found a

Mossberg twelve-gauge shotgun and a Mossberg .22 caliber rifle contained in “gun

cases or gun sleeves” and determined that the guns were not loaded. He testified that

it “was a walk-in type closet . . . [and] the guns were on the right-hand side against

 -3-
 STATE V. POWELL

 Opinion of the Court

the wall. There was [sic] some clothing items kind of up against them.” He stated

that the clothes in front of the guns were “[m]en’s clothing” but there were also

“female clothing, shoes, . . . [and] male shoes” in the closet.

 Investigator Blackwood seized the weapons, and Defendant was placed under

arrest. On 18 May 2015, he was indicted by a grand jury for possession of a firearm

by a felon.

 A jury trial was held on 23 September 2015 before the Honorable Patrice

Hinnant in Catawba County Superior Court. On the morning of trial, Defendant filed

a motion to suppress evidence of the firearms seized from his residence, arguing that

the officers’ search of his home violated his rights under the Fourth Amendment to

the United States Constitution as well as N.C. Gen. Stat. § 15A-1343(b)(13). At the

hearing on the motion to suppress, Officer Lackey, Officer Osborne, and Investigator

Blackwood testified about their search of Defendant’s home. The trial court orally

denied Defendant’s motion.

 At trial, the State presented testimony from Officer Lackey, Officer Osborne,

and Investigator Blackwood. Defendant and his wife testified for the defense. The

jury found Defendant guilty of possession of a firearm by a felon.

 On 14 December 2015, the trial court sentenced Defendant to 12 to 24 months

imprisonment. The court also revoked Defendant’s probation and activated his

 -4-
 STATE V. POWELL

 Opinion of the Court

sentence from his prior conviction of felony breaking or entering. Defendant gave

oral notice of appeal.

 Analysis

 Defendant’s primary argument on appeal is that the trial court erred by

denying his motion to suppress. Specifically, he contends the State failed to

demonstrate that the evidence offered against him at trial was obtained by means of

a lawful warrantless search.

 As an initial matter, we must determine whether this issue was properly

preserved for appeal. Defendant acknowledges that although he filed a motion to

suppress evidence of the firearms seized from his home, he failed to renew his

objection when the State sought to admit the evidence at trial. Our Supreme Court

has explained that

 [t]o preserve an issue for appeal, the defendant must make
 an objection at the point during the trial when the State
 attempts to introduce the evidence. A defendant cannot
 rely on his pretrial motion to suppress to preserve an issue
 for appeal. His objection must be renewed at trial.
 [Defendant’s] failure to object at trial waived his right to
 have this issue reviewed on appeal.

State v. Golphin, 352 N.C. 364, 463, 533 S.E.2d 168, 232 (2000) (internal citations

omitted), cert. denied, 532 U.S. 931, 149 L. Ed. 2d 305 (2001). Accordingly, Defendant

failed to properly preserve this issue for appellate review.

 -5-
 STATE V. POWELL

 Opinion of the Court

 However, our Supreme Court has held that “to the extent [a] defendant fail[s]

to preserve issues relating to [his] motion to suppress, we review for plain error” if

the defendant “specifically and distinctly assign[s] plain error” on appeal. State v.

Waring, 364 N.C. 443, 468, 508, 701 S.E.2d 615, 632, 656 (2010), cert. denied, 565

U.S. 832, 181 L. Ed. 2d. 53 (2011). Because Defendant has expressly made a plain

error argument in his appellate brief, we review his argument under this standard.

 For error to constitute plain error, a defendant must
 demonstrate that a fundamental error occurred at trial. To
 show that an error was fundamental, a defendant must
 establish prejudice — that, after examination of the entire
 record, the error had a probable impact on the jury’s
 finding that the defendant was guilty. Moreover, because
 plain error is to be applied cautiously and only in the
 exceptional case, the error will often be one that seriously
 affects the fairness, integrity or public reputation of
 judicial proceedings.

State v. Lawrence, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (internal citations,

quotation marks, and brackets omitted).

 In conducting our review for plain error, we must first determine whether the

trial court did, in fact, err in denying Defendant’s motion to suppress. See State v.

Oxendine, __ N.C. App. __, __, 783 S.E.2d 286, 292 (“The first step under plain error

review is . . . to determine whether any error occurred at all.”), disc. review denied, __

N.C. __, 787 S.E.2d 24 (2016).

 The State contends that the warrantless search of Defendant’s home was

authorized by N.C. Gen. Stat. § 15A-1343(b)(13), which states as follows:

 -6-
 STATE V. POWELL

 Opinion of the Court

 (b) Regular Conditions. -- As regular conditions of
 probation, a defendant must:

 ....

 (13) Submit at reasonable times to warrantless
 searches by a probation officer of the probationer’s
 person and of the probationer’s vehicle and premises
 while the probationer is present, for purposes
 directly related to the probation supervision, but the
 probationer may not be required to submit to any
 other search that would otherwise be unlawful.

N.C. Gen. Stat. § 15A-1343(b) (2015) (emphasis added).

 Normally, “[t]he standard of review in evaluating the denial of a motion to

suppress is whether competent evidence supports the trial court’s findings of fact and

whether the findings of fact support the conclusions of law.” State v. Jackson, 368

N.C. 75, 78, 772 S.E.2d 847, 849 (2015) (citation and quotation marks omitted). Here,

however, the trial court summarily denied Defendant’s motion to suppress without

making any findings of fact or conclusions of law.

 N.C. Gen. Stat. § 15A-977 states that when ruling on a motion to suppress,

“[t]he judge must set forth in the record his findings of facts and conclusions of law.”

N.C. Gen. Stat. § 15A-977 (2015). However, despite this statutory directive, our

Supreme Court has held that “only a material conflict in the evidence—one that

potentially affects the outcome of the suppression motion—must be resolved by

explicit factual findings that show the basis for the trial court’s ruling. When there is

no conflict in the evidence, the trial court’s findings can be inferred from its decision.”

 -7-
 STATE V. POWELL

 Opinion of the Court

State v. Bartlett, 368 N.C. 309, 312, 776 S.E.2d 672, 674 (2015) (internal citations

omitted).1

 At a suppression hearing, “the burden is upon the state to demonstrate the

admissibility of the challenged evidence[.]” State v. Cheek, 307 N.C. 552, 556-57, 299

S.E.2d 633, 636 (1983) (citation omitted). Here, as noted above, the testimony relied

upon by the State at the suppression hearing came from three of the officers who

participated in the search of Defendant’s home. Therefore, the State’s contention that

the search was lawful under N.C. Gen. Stat. § 15A-1343(b)(13) hinges on the

adequacy of the officers’ testimony regarding the purpose of the 4 March 2015 search.

For this reason, it is necessary to carefully review their testimony on this issue.

 Officer Lackey testified, in pertinent part, as follows:

 [PROSECUTOR:] And for what purpose on March
 4th did you go to the defendant’s residence?

 [OFFICER LACKEY:] We were conducting a
 warrantless search of his residence with the U.S. Marshal’s
 task force.

 [PROSECUTOR:] And other than Officer Osborne
 and Officer Blackwood who else was with you?

 [OFFICER LACKEY:] Task force officer Jamie
 Carey, who is also employed with the North Carolina
 Department of Public Safety, as well as to my knowledge,
 two or three other U.S. Marshals.

 1 We take this opportunity to reiterate, however, that even in cases where there is no material
conflict in the evidence presented, “findings of fact are preferred.” State v. Norman, 100 N.C. App.
660, 663, 397 S.E.2d 647, 649 (1990) (citation omitted), disc. review denied, 328 N.C. 273, 400 S.E.2d
459 (1991).

 -8-
 STATE V. POWELL

 Opinion of the Court

 ....

 [DEFENSE COUNSEL:] Officer Lackey, are you or
were you [Defendant]’s supervising officer?

 [OFFICER LACKEY:] I am not.

 [DEFENSE COUNSEL:] Was Mr. Osborne the
supervising officer?

 [OFFICER LACKEY:] No.

 [DEFENSE COUNSEL:] How was the
determination made to search [Defendant]’s residence that
evening?

 [OFFICER LACKEY:] Part of the operation we were
conducting with the U.S. Marshal’s task force, Officer
Osborne and I were assigned to a specific area of the
county. And he was one of the offenders in the area of the
county that we were asked to search.

 [DEFENSE COUNSEL:] Who asked you to search?

 [OFFICER LACKEY:] Our supervisor.

 [DEFENSE COUNSEL:] Does your supervisor also
work for the U.S. Marshal’s Service?

 [OFFICER LACKEY:] No, she does not.

 [DEFENSE COUNSEL:] Did anybody in your office
tell you that he was being searched for any particular
reasons?

 [OFFICER LACKEY:] Not any particular reason.

 [DEFENSE COUNSEL:] Did you or any of the other
people that entered the home that evening tell [Defendant]

 -9-
 STATE V. POWELL

 Opinion of the Court

and [Defendant’s wife] that you were conducting a random
search?

 [OFFICER LACKEY:] Yes.

 ....

 [DEFENSE COUNSEL:] How many people entered
the home?

 [OFFICER LACKEY:] Let’s see, it was myself,
Officer Osborne, Officer Terry, Investigator Blackwood,
and approximately two, three, maybe four U.S. Marshal
officers.

 ....

 [DEFENSE COUNSEL:] Are you aware of any
complaints about [Defendant], and any illegal activity,
contraband he might have had, any reason to have gone to
his house other than just a random search?

 [OFFICER LACKEY:] No, sir.

 ....

 COURT: So, this was basically a list of persons that
were on a special task force list to search if they were on
probation, or was probation included as a reason for a
condition of the search?

 [OFFICER LACKEY]: It was offenders directly on
probation or post release. There were some that were
selected because they were gang members, but not all
offenders that were selected had that criteria. It was also a
random selection of offenders as well.

 COURT: And this was a list created by federal law
enforcement?

 - 10 -
 STATE V. POWELL

 Opinion of the Court

 [OFFICER LACKEY]: No, it was created by the
 supervisors in our district to provide to the task force as a
 guide to go by for searches.

 ....

 [DEFENSE COUNSEL:] Has there ever been any
 indication whatsoever that [Defendant] and [Defendant’s
 wife], or anybody there was such [sic] member of a gang, or
 had any gang activity?

 [OFFICER LACKEY:] No, sir.

 [DEFENSE COUNSEL:] Did you ever speak with
 [Defendant]’s probation officer to find out whether or not
 she had any suspicions of any kind of illegal activity, or
 anything contrary to his probation?

 [OFFICER LACKEY:] No, sir.

Officer Osborne’s testimony consisted of the following with regard to this issue:

 [PROSECUTOR:] And Officer Osborne, for what
 purpose were you at the defendant’s residence that
 evening?

 [OFFICER OSBORNE:] To conduct a warrantless
 search.

 [PROSECUTOR:] And . . . back in March of this year
 [Defendant] was on probation for a felony conviction
 arising out of Burke County, isn’t that correct?

 [OFFICER OSBORNE:] That’s correct.

 [PROSECUTOR:] And part of his probationary
 requirements was that he would be subject to warrantless
 searches and seizures, isn’t that correct?

 [OFFICER OSBORNE:] Yes, sir.

 - 11 -
 STATE V. POWELL

 Opinion of the Court

 [PROSECUTOR:] And part of his probation was that
 while on probation as a convicted felon he would not be able
 to own firearms or be in the care, custody, and control of
 firearms, or be around firearms, is that not correct, Officer?

 [OFFICER OSBORNE:] That’s correct.

 [PROSECUTOR:] Okay. Now, you and Officer
 Lackey were present during this search, is that correct?

 [OFFICER OSBORNE:] That’s correct.

 [PROSECUTOR:] And Officer Blackwood was
 present during this search, correct?

 [OFFICER OSBORNE:] Yes, sir.

 ....

 [DEFENSE COUNSEL:] You’re not [Defendant]’s
 supervising officer are you?

 [OFFICER OSBORNE:] I am not.

 [DEFENSE COUNSEL:] And you weren’t at the
 time, were you?

 [OFFICER OSBORNE:] Was not.

Finally, Investigator Blackwood testified, in pertinent part, as follows:

 [PROSECUTOR:] And for what purpose were you
 accompanying the probation officers?

 [INVESTIGATOR BLACKWOOD:] To assist in a
 search of the residence for any illegal contraband and
 weapons.

 ....

 - 12 -
 STATE V. POWELL

 Opinion of the Court

 [DEFENSE COUNSEL:] Has there ever been any
 indication whatsoever that [Defendant] and [his wife], or
 anybody there was such [sic] member of a gang, or had any
 gang activity?

 [INVESTIGATOR BLACKWOOD:] No, sir.

 [DEFENSE COUNSEL:] Did you ever speak with
 [Defendant]’s probation officer to find out whether or not
 she had any suspicions of any kind of illegal activity, or
 anything contrary to his probation?

 [INVESTIGATOR BLACKWOOD:] No, sir.

 The North Carolina General Assembly amended N.C. Gen. Stat. § 15A-

1343(b)(13) on 30 July 2009. Prior to the amendment, subsection (b)(13) stated, in

pertinent part, that a warrantless search of a probationer by a probation officer must

be “reasonably related to his or her probation supervision[.]” 2009 N.C. Sess. Laws

667, 672, 673, ch. 372, §§ 9.(a), 9.(b) (emphasis added) (codified at N.C. Gen. Stat.

§ 15A-1343(b)(13) (2015)). However, by virtue of the 2009 amendment, this portion

of subsection (b)(13) was changed to require that warrantless searches by a probation

officer be “for purposes directly related to the probation supervision[.]” See id.

(emphasis added).

 The General Assembly did not define the phrase “directly related” in its 2009

amendment to N.C. Gen. Stat. § 15A-1343(b)(13). It is well established that where

words contained in a statute are not defined therein, it is appropriate to examine the

plain meaning of the words in question absent any indication that the legislature

 - 13 -
 STATE V. POWELL

 Opinion of the Court

intended for a technical definition to be applied. See State v. Arnold, 147 N.C. App.

670, 674, 557 S.E.2d 119, 122 (2001) (“Words undefined in the statute should be given

their plain and ordinary meaning.” (citation omitted)), aff’d per curiam, 356 N.C. 291,

569 S.E.2d 648 (2002); Sharpe v. Worland, 137 N.C. App. 82, 88, 527 S.E.2d 75, 79

(2000) (“Where the General Statutes fail to provide a definition of a term, it is

appropriate to turn for guidance to dictionaries.” (citations omitted)), disc. review

denied, 352 N.C. 150, 544 S.E.2d 228 (2000).

 The word “directly” has been defined as “in unmistakable terms.” Webster’s

Third New International Dictionary 641 (1966). “Reasonable” is defined, in pertinent

part, as “being or remaining within the bounds of reason.” Id. at 1892. “When the

General Assembly amends a statute, the presumption is that the legislature intended

to change the law.” State v. White, 162 N.C. App. 183, 189, 590 S.E.2d 448, 452 (2004)

(citation and quotation marks omitted). Thus, we infer that by amending subsection

(b)(13) in this fashion, the General Assembly intended to impose a higher burden on

the State in attempting to justify a warrantless search of a probationer’s home than

that existing under the former language of this statutory provision.

 Although all of our prior caselaw evaluating warrantless searches conducted

pursuant to N.C. Gen. Stat. § 15A-1343(b)(13) applies the version of this statutory

provision in effect prior to the 2009 statutory amendment, it is nevertheless helpful

to review these decisions. In State v. McCoy, 45 N.C. App. 686, 263 S.E.2d 801, appeal

 - 14 -
 STATE V. POWELL

 Opinion of the Court

dismissed and disc. review denied, 300 N.C. 377, 267 S.E.2d 681 (1980), this Court

stated that “the United States Constitution is not violated by the requirement that a

probationer submit to warrantless searches as a condition of probation. The courts of

North Carolina and of other states, have approved of this condition.” Id. at 690, 263

S.E.2d at 804 (citations omitted). We reasoned that “[a]s a condition to probation,

defendant had waived his right to be free from warrantless searches conducted in a

lawful manner by his probation officer.” Id. at 691, 263 S.E.2d at 804-05. We further

explained that

 [p]ersons conditionally released to society . . . may have a
 reduced expectation of privacy, thereby rendering certain
 intrusions by governmental authorities “reasonable” which
 otherwise would be invalid under traditional constitutional
 concepts, at least to the extent that such intrusions are
 necessitated by legitimate governmental demands. Thus, a
 probationer who has been granted the privilege of
 probation on condition that he submit at any time to a
 warrantless search may have no reasonable expectation of
 traditional Fourth Amendment protection.

 ....

 The official commentary to G.S. 15A-1343 states: This
 section specifies a number of conditions of probation,
 primarily ones that will be used fairly frequently, that may
 be imposed. The list is meant neither to be exclusive nor to
 suggest that these conditions should be imposed in all
 cases. Condition (15),2 dealing with searches, recognizes
 that the ability to search a probationer in some instances
 is an essential element of successful probation. It includes
 two important limits: (1) only a probation officer, and not a

 2 The statutory language currently found in subsection (b)(13) that addresses warrantless
searches of a probationer’s home was formerly contained in subsection (b)(15).

 - 15 -
 STATE V. POWELL

 Opinion of the Court

 law-enforcement officer, may search the probationer under
 this condition, and (2) the search may be only for purposes
 reasonably related to the probation supervision.

Id. at 691-92, 263 S.E.2d at 805 (internal citation, quotation marks, brackets, and

formatting omitted and footnote added).

 We have since applied this statutory provision on several occasions in the

context of evaluating warrantless searches of a probationer’s residence. In State v.

Howell, 51 N.C. App. 507, 277 S.E.2d 112 (1981), the defendant’s probation officer

received a tip from an informant that the defendant was using drugs. She enlisted

the assistance of law enforcement officers to help her conduct a search of the

defendant’s home, which uncovered the presence of illegal drugs. In moving to

suppress the evidence, the defendant argued that the presence of law enforcement

officers during the search rendered it unlawful under N.C. Gen. Stat. § 15A-1343(b).

Id. at 508, 277 S.E.2d at 113.

 We disagreed, holding that “[a] probation officer’s search as authorized by G.S.

15A-1343(b)(15) is not necessarily invalid due to the presence, or even participation

of, police officers in the search.” Id. at 509, 277 S.E.2d at 114. We noted that “it

would have been difficult for [the probation officer] to conduct a useful search of the

house described in the record, and keep watch of two individuals at the same time.”

Id. We concluded that “we are not persuaded by defendant’s argument that the

warrantless search was initiated and accomplished by the police and was therefore

 - 16 -
 STATE V. POWELL

 Opinion of the Court

unreasonable. Through the testimony of [his probation officer] the evidence is

sufficient to support the trial court’s finding that ‘under the circumstances disclosed

by this evidence’ the search was reasonable.” Id.

 In State v. Church, 110 N.C. App. 569, 430 S.E.2d 462 (1993), law enforcement

officers contacted the defendant’s probation officer after learning that he was in

possession of marijuana plants. The probation officer then arrived at the defendant’s

home and conducted a warrantless search along with law enforcement officers during

which the plants were discovered. Id. at 573, 430 S.E.2d at 464.

 This Court upheld the validity of the search despite the defendant’s contention

that it was “initiated and conducted by police officers, rather than his probation

officer.” Id. at 576, 430 S.E.2d at 466. We reiterated that “the presence and

participation of police officers in a search conducted by a probation officer, pursuant

to a condition of probation, does not, standing alone, render the search invalid.” Id.

We explained that the “[e]vidence presented at defendant’s hearing tended to

establish that the probation officer conducted the search of defendant’s premises with

the assistance of the officers” and that the purpose of the search was not unlawful.

Id. (emphasis omitted).

 In State v. Robinson, 148 N.C. App. 422, 560 S.E.2d 154 (2002), law

enforcement officers received an anonymous tip that the defendant was in possession

of marijuana at his home. The officers subsequently contacted the defendant’s

 - 17 -
 STATE V. POWELL

 Opinion of the Court

probation officer, and a plan was formed to search the defendant’s residence. Id. at

424, 560 S.E.2d at 156. When the officers arrived, the probation officer obtained

consent from the defendant to search the home at which point the other officers

conducted a warrantless search of the premises, leading them to discover and seize

marijuana. The defendant was then charged with multiple drug offenses. Id. at 425,

560 S.E.2d at 157.

 On appeal from the denial of his motion to suppress, the defendant argued that

the law enforcement officers had used his probation officer’s “authority to search

[him] in lieu of obtaining a search warrant, thereby resulting in an attempt by [his

probation officer] to gain consent to search Defendant’s house which was not in

furtherance of the supervisory goals of probation, and was therefore unreasonable

under the Fourth Amendment.” Id. at 428, 560 S.E.2d at 159. We rejected this

argument, ruling that because the defendant’s probation officer was provided with

information that “indicated . . . Defendant was in violation of his probation . . . [i]t

clearly furthered the supervisory goals of probation for [the law enforcement officers]

to forward this information to [him], and for [the probation officer] to attempt to

investigate this information further by seeking Defendant’s consent to a search of the

house.” Id. at 428-29, 560 S.E.2d at 159. Thus, we concluded, “[t]he fact that . . . other

officers were in the general area of Defendant’s home when [his probation officer]

 - 18 -
 STATE V. POWELL

 Opinion of the Court

approached him about consenting to a search [did] not affect the legality of [the

probation officer’s] conduct.” Id.

 We also find instructive the Fourth Circuit’s decision in United States v.

Midgette, 478 F.3d 616, 622 (4th Cir.), cert. denied, 551 U.S. 1157, 168 L. Ed. 2d 749

(2007). In that case, the defendant’s probation officer was informed by a police officer

that the defendant “might be in possession of a firearm.” Id. at 619. After meeting

with the defendant at the probation office, the probation officer determined that “it

probably would be a good idea to search [the defendant’s] house.” Id. (quotation

marks omitted). The probation officer asked New Bern police officers to assist her in

searching the defendant’s residence. The officers found firearms, ammunition, and

marijuana in the home, and he was indicted for possession of a firearm by a felon. Id.

at 620. The defendant moved to suppress the evidence seized during the search. The

trial court applied N.C. Gen. Stat. § 15A-1343(b) and found that the search of the

defendant’s home was lawful pursuant to a special condition of his probation

requiring him to submit to searches by a probation officer for purposes that were

“reasonably related to probation supervision.” Id. at 618-19.

 On appeal, the defendant argued that this special condition of his probation

violated the Fourth Amendment because it did not require “any degree of certainty

that the probationer actually possesses contraband or that he has violated his

 - 19 -
 STATE V. POWELL

 Opinion of the Court

probation or the law[.]” Id. at 622 (citation and quotation marks omitted). The

Fourth Circuit explained the purpose of N.C. Gen. Stat. § 15A-1343 as follows:

 North Carolina has the . . . need to supervise probationers’
 compliance with the conditions of their probation in order
 to promote their rehabilitation and protect the public’s
 safety. To satisfy this need, North Carolina authorizes
 warrantless searches of probationers by probation officers.
 But North Carolina has narrowly tailored the
 authorization to fit the State’s needs, placing numerous
 restrictions on warrantless searches. The sentencing judge
 must specially impose the warrantless search condition,
 and not all probationers are subject to it; the search must
 be conducted during a reasonable time; the probationer
 must be present during the search; the search must be
 conducted for purposes specified by the court in the
 conditions of probation; and it must be reasonably related
 to the probationer’s supervision. These criteria impose
 meaningful restrictions, guaranteeing that the searches
 are justified by the State’s “special needs,” not merely its
 interest in law enforcement.

Id. at 624 (internal citation omitted and emphasis added).

 Here, it is clear from the officers’ testimony that the search of Defendant’s

home occurred as a part of an ongoing operation of a U.S. Marshal’s Service task

force. At trial, Officer Lackey testified as follows:

 [PROSECUTOR:] And for what purpose were you
 out and on duty that evening, Officer Lackey?

 [OFFICER LACKEY:] We were conducting an
 operation with the U.S. Marshal’s task force service. . . .

 Moreover, with regard to the goal of the operation, Officer Osborne testified to

the following:

 - 20 -
 STATE V. POWELL

 Opinion of the Court

 [DEFENSE COUNSEL:] The search of [Defendant]
 was not a targeted search, was it? You didn’t specifically
 pick him for a reason?

 [OFFICER OSBORNE:] The list that was made to
 search was targeting violent offenses involving firearms,
 drugs, that was the target of the search.3

(Footnote and emphasis added.)

 While our prior caselaw interpreting N.C. Gen. Stat. § 15A-1343(b) makes clear

that the presence and participation of law enforcement officers does not, by itself,

render a warrantless search under the statute unlawful, the State must meet its

burden of satisfying the “purpose” element of subsection (b)(13) — a burden that has

been rendered more stringent by the 2009 statutory amendment. We are unable to

conclude that the State has met that burden here. See, e.g., United States v. Irons,

No. 7:16-CR-00055-F-1, 2016 U.S. Dist. LEXIS 168844, 2016 WL 7174648 *4

(E.D.N.C. Dec. 7, 2016) (although post-release supervisee was required to submit to

warrantless searches for purposes reasonably related to his post-release supervision,

the warrantless search of his home was unlawful where “[i]nstead of the search being

supervisory in nature, it was conducted as part of a joint law enforcement initiative

referred to as Operation Zero Hour”).

 3 We note that there is no suggestion in the record that Defendant’s own probation officer was
even notified — much less consulted — regarding the search of Defendant’s home.

 - 21 -
 STATE V. POWELL

 Opinion of the Court

 Were we to determine that the present search was permissible under N.C. Gen.

Stat. § 15A-1343(b)(13), we would essentially be reading the phrase “for purposes

directly related to the probation supervision” out of the statute. This we cannot do.

See N.C. Bd. of Exam’rs for Speech Path. v. N.C. State Bd. of Educ., 122 N.C. App. 15,

21, 468 S.E.2d 826, 830 (1996) (“Since a legislative body is presumed not to have used

superfluous words, our courts must accord meaning, if possible, to every word in a

statute.”), aff’d per curiam in part and disc. review improvidently allowed in part, 345

N.C. 493, 480 S.E.2d 50 (1997). Thus, even assuming the trial court found the

testimony of all the testifying officers at the suppression hearing to be credible, the

evidence presented by the State was simply insufficient to satisfy the requirements

of N.C. Gen. Stat. § 15A-1343(b)(13).

 We wish to emphasize that our opinion today should not be construed as

diminishing any of the authority conferred upon probation officers by N.C. Gen. Stat.

§ 15A-1343(b)(13) to conduct warrantless searches of probationers’ homes or to utilize

the assistance of law enforcement officers in conducting such searches. Rather, we

simply hold that on the specific facts of this case the State has failed to meet its

burden of demonstrating that the search of Defendant’s residence was authorized

under this statutory provision.

 Having determined that the motion to suppress was erroneously denied, we

turn to the second step in our plain error review — whether this error had a probable

 - 22 -
 STATE V. POWELL

 Opinion of the Court

impact on the jury’s determination that Defendant was guilty. Here, this prong is

easily met. Had Defendant’s motion to suppress been granted, no evidence showing

criminal conduct on his part would have been obtained, and thus no basis would have

existed to prosecute him for the offense for which he was convicted. Therefore, it is

clear that the trial court’s erroneous denial of Defendant’s motion to suppress had a

probable impact on the jury’s guilty verdict. See Lawrence, 365 N.C. at 518, 723

S.E.2d at 334. Accordingly, because Defendant has shown the trial court’s denial of

his motion to suppress amounted to plain error, we reverse the order denying his

motion and vacate his conviction.4

 Conclusion

 For the reasons stated above, we reverse the trial court’s order denying

Defendant’s motion to suppress and vacate his conviction for possession of a firearm

by a felon.

 REVERSED AND VACATED.

 Judges BRYANT and STROUD concur.

 4Based on our ruling that the denial of Defendant’s motion to suppress constituted plain error,
we need not address his remaining arguments on appeal.

 - 23 -